# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| A. GLENN DIDDEL, III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4811 |
| | § | |
| THOMAS M. DAVIS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

A. Glenn Diddel, III, a lawyer who lives and works in Texas, filed this suit in Texas state court, alleging that three out-of-state defendants conspired to file a frivolous grievance against him with the State Bar of Texas and to file a frivolous lawsuit against him in Florida. The grievance and the Florida lawsuit arise from Diddel's attempt to sell a piece of undeveloped Florida residential land that was in the estates of Diddel's father and aunt. Diddel alleges that although the parties agreed on a price of $12,000, probate issues delayed the property transaction. Diddel alleges that in July 2004, the would-be purchaser of the property, Thomas M. Davis, a Maryland resident, filed a grievance against Diddel with the State Bar of Texas. The State Bar sent Diddel notification that the grievance had been filed and dismissed. In the same month, Diddel received a letter from a lawyer representing Davis, Ronald S. Canter, Esq., of Maryland. The letter stated that Davis had instructed Canter to draft a complaint and retain local counsel to sue Diddel in Florida over the real estate transaction. The local counsel was Leif Grazi, Esq., of Florida. The draft complaint

enclosed with the letter alleged fraud in the inducement and breach of contract and sought punitive damages. The complaint Canter and Grazi ultimately filed in Florida state court on Davis's behalf did not include punitive damages allegations. In a proposed amended complaint in this lawsuit, Diddel asserts that such allegations could not have been asserted under Florida law, making their inclusion in the draft complaint sent to him in Texas improper.

In this suit, removed to federal court on the basis of diversity jurisdiction, Diddel alleges that the State Bar grievance and the draft complaint of the Florida lawsuit and the lawsuit itself were frivolous and filed for the improper purpose of causing Diddel emotional distress and pressuring him to sell the Florida land. Diddel seeks damages under Texas law for conspiracy to commit unlawful acts and for intentional infliction of emotional distress. The Florida lawsuit was also removed to federal court, where it remains pending. Diddel has counterclaimed in that case, asserting, among other things, that Davis filed the grievance with the State Bar of Texas and sent the draft complaint relating to the lawsuit in Florida in order to pressure Diddel to sell the land. The Florida court has held a bench trial.

This court issued a memorandum and order on June 2, 2005 that dismissed the claims against the defendants relating to the Florida lawsuit, finding no personal jurisdiction. This court dismissed the claims against Grazi relating to the Texas State Bar grievance, but retained the claims against Davis and Canter, based on the allegations in the complaint. (Docket Entry No. 33, pp. 2, 19). Diddel has since filed a motion for leave to amend his complaint. The proposed amended complaint adds claims that both Canter and Grazi

"conspired to have Mr. Davis file a fraudulent grievance that wrongly accused Mr. Diddel of engaging in fraud," and that neither Canter nor Grazi represented Davis in filing the grievance. Diddel asks this court to reconsider the dismissal of the claims relating to the Florida lawsuit and to allow him discovery on the allegations relating to the filing of the State Bar grievance.

The following motions are pending:

• Plaintiff A. Glenn Diddel's motion for continuance of deadline for dispositive motions. (Docket Entry No. 35).

• Diddel's motion for leave to amend the complaint. (Docket Entry No. 36).

• Diddel's motion for reconsideration of this court's June 2, 2005 memorandum and order. (Docket Entry No. 38).

• Defendant Leif Grazi's motion for severance. (Docket Entry No. 42).

• A joint motion for protective order filed by defendants Thomas Davis, Ronald S. Canter, and Leif Grazi, and motion to quash the depositions of Davis, Canter, Grazi, and Joan Beyer. (Docket Entry No. 43).

• Diddel's motion for leave to take the depositions of Thomas Davis, Ronald S. Canter, Leif Grazi, and Joan Beyer. (Docket Entry No. 53).

• Defendant Ronald S. Canter's motion to dismiss for failure to state a claim. (Docket Entry No. 44).

• Defendant Thomas Davis's motion to dismiss for failure to state a claim. (Docket Entry No. 47).

Based on a careful review of the parties' motions, responses, submissions, and applicable law, this court: denies Diddel's motion for leave to amend; denies Diddel's motion for reconsideration; and grants defendants' motions to dismiss. As a result, the remaining

motions are either denied or moot.  The reasons for these rulings are stated below.

**I.      The Motion for Leave to Amend and the Motions to Dismiss**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "shall be freely given when justice requires," FED. R. CIV. P. 15(a), and "'evinces a bias in favor of granting leave to amend.'" *Martin's Herend Imports v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)).  Leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Inc. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy*, 660 F.2d at 598).  A district court reviewing a motion to amend pleadings under Rule 15(a) may consider factors such as "whether there has been 'undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party, and futility of amendment.'" *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (quoting *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996)).

In order to deny leave on the basis that an amendment would be futile, a court must find "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Jamieson by and through Jamieson v. Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)).  There is little "distinction between analysis of the procedural context under Rule 15(a) and analysis of the sufficiency of the complaint under Rule 12(b)(6)." *Id.* (citations omitted).

In a Rule 12(b)(6) motion, "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Copeland v. Wasserstein,*

*Perella, & Co., Inc.*, 278 F.3d 472, 477 (5th Cir. 2002).  A claim may be dismissed "when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief."  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).  The court must accept as true the well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiff.  *Taylor*, 296 F.3d at 378.  A claim should not be dismissed "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."  *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).  Conclusory allegations will not suffice to preclude dismissal.  *Taylor*, 296 F.3d at 378.  In evaluating a motion to dismiss, "a district court must limit itself to the contents of the pleadings, including attachments thereto."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is a valid means to raise an affirmative defense that will bar the award of any remedy.  5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004).  A court may dismiss a case if the affirmative defense or other bar to relief appears on the face of the complaint.  *Garrett v. Commonwealth Mortgage Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991).  "Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."  *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

Diddel claims that defendants conspired to file a frivolous grievance against him with the State Bar of Texas. Davis and Canter have filed motions to dismiss this claim under Rule 12(b)(6). (Docket Entry Nos. 44, 47). Grazi has filed a motion opposing Diddel's motion for leave to amend the complaint to add allegations as to his involvement. Defendants argue that they are entitled to absolute immunity for the alleged roles in filing a complaint with the State Bar of Texas. (Docket Entry No. 44, p. 3; Docket Entry No. 47, p. 2).

Diddel responds by arguing that neither Davis nor Canter have filed an answer in this case, that immunity is an affirmative defense that must be pleaded in an answer, and that their failure properly to plead immunity has waived that defense. (Docket Entry No. 48, pp. 1–3). Diddel also asks this court to reconsider its dismissal of this claim against Grazi by granting the motion for leave to amend the complaint to add allegations as to Grazi's involvement in the filing of the grievance by Davis.

A Rule 12(b)(6) motion "must be made before the service of a responsive pleading." WRIGHT & MILLER § 1357. Diddel cites to *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 283 (5th Cir. 2002), to support his argument that Davis and Canter should have pleaded immunity as an affirmative defense in an answer rather than in a motion to dismiss under Rule 12(b)(6). In *Cozzo,* the court held that the defendants waived their immunity defense because "neither their answer nor motion to dismiss plead the affirmative defense of absolute immunity." *Id.* Defendants did assert absolute immunity in motions to dismiss. They have not waived this defense.

Diddel also argues that because Canter and Davis moved to dismiss the original

complaint and he has moved for leave to file a first amended complaint, their motions to dismiss are moot. (Docket Entry No. 55, p. 6; Docket Entry No. 56, p. 6). Defendants' arguments remain valid as to the proposed first amended complaint; the motions to dismiss are still viable. *See Dearmon v. Texas Migrant Council, Inc.*, 252 F. Supp.2d 367, 367 (S.D. Tex. 2003). The motions to dismiss the original petition present arguments that support the denial of the motion for leave to amend on the basis of futility. The issue is whether the allegations in the proposed amended complaint require the conclusion that the defendants would be immune from liability arising from the grievance that Davis filed with the State Bar of Texas.

> Section 81.072 of the Texas Government Code provides:
>
> A person may not maintain an action against a complainant or witness in a disciplinary proceeding based on a communication made by the complainant or witness to the commission, a grievance committee, or the chief disciplinary counsel. The immunity granted by this subsection is absolute and unqualified.

TEX. GOV'T CODE ANN. § 81.072(g) (Vernon 2003). Texas Rule of Disciplinary Procedure 15.09 provides that "[n]o lawsuit may be instituted against any Complainant or witness predicated upon the filing of a Grievance or participation in the attorney disciplinary and disability system."

Diddel cites *Green v. James*, 473 F.2d 660 (9th Cir. 1973), and *Traina v. Blanchard*, No. 97-0348, 1998 WL 483485 (E.D. La. Aug. 13, 1998), for the proposition that an immunity defense may not be decided on a motion to dismiss. These cases deal with situations in which an official was immune for actions in his or her official capacity or an

employee was immune for actions in the scope of his or her employment. In those cases, whether the official was acting in his or her official capacity or whether the employee was acting within the scope of his or her employment was a disputed fact issue material to determining qualified immunity. This case is different. An individual who files a grievance with the Texas State Bar is absolutely immune from suit. The issue of immunity may be decided as a matter of law based on the complaint, the proposed amended complaint, and the attachments thereto. *See Austin Municipal*, 757 F.2d at 691–92 (finding as a matter of law that disciplinary officers and staff members of National Association of Securities Dealers involved in disciplinary actions had not waived their absolute immunity from suit).

Davis is clearly covered by the absolute immunity provided under Texas law. Diddel argues that Davis is not eligible for such immunity because he filed a grievance for an improper purpose—"to exploit the *in terrorem* effect of the grievance process to obtain an advantage over Plaintiff as a private individual and litigant"—rather than for the "purposes recognized in the policy underlying the immunity." (Docket Entry No. 56, pp. 16–18). Such an approach is inconsistent with the absolute nature of the immunity provided. Absolute immunity, unlike qualified immunity, applies even if the underlying alleged conduct is illegal, improper, or malicious. Because "absolute immunity must be absolute," *DL Capital Group, LLC v. Nasdaq Stock Market, Inc.*, 409 F.3d 93, 95 (2d Cir. 2005), it must protect even actions that a plaintiff could ultimately establish were in violation of law. Diddel's proposed amended complaint alleges that Davis was a complainant who filed a grievance against Diddel with the State Bar of Texas, accusing Diddel of fraudulent conduct in a real

estate transaction. The original petition and proposed amended complaint allege facts as to Davis's role in filing a grievance with the State Bar of Texas that trigger absolute immunity. Davis's motion to dismiss is granted; Diddel's motion for leave to amend the complaint to add allegations as to Davis's role in filing the grievance with the State Bar of Texas is denied.

Canter also moves to dismiss the allegations in the original petition and opposes adding allegations in the proposed amended complaint against him arising from the filing of the grievance. Grazi opposes the motion for leave to amend to add allegations against him for conspiracy to have Davis file the State Bar grievance. In the proposed amended complaint, Diddel alleges that Davis filed his grievance alone, so that Canter and Grazi were neither grievants, counsel to a grievant, nor involved in making a "statement" to the State Bar grievance committee. At the same time, Diddel alleges that Canter and Grazi "conspired to have Mr. Davis file a fraudulent grievance that wrongly accused Mr. Diddel of engaging in fraud," and as evidence of the lawyers' involvement, Diddel cites to the "lawyerly language" in the grievance that mirrored the language used in the draft complaint Canter sent to Diddel. (Docket Entry No. 37, p. 12).

"Recognizing the importance of the disciplinary process to the judiciary," courts have read the grant of immunity afforded those involved in State Bar proceedings broadly. *Bishop v. State Bar of Texas*, 791 F.2d 435, 438 (5th Cir. 1986). In addition to the statutory immunity provided to complainants or witnesses based on participation in the attorney disciplinary process, courts treat a grievance or disciplinary proceeding before a state bar

association as a "quasi-judicial proceeding" and recognize absolute privilege against suit for statements made in the course of the proceeding, a privilege more accurately characterized as an immunity. *See Barnes v. Madison*, No. 02-50937, 79 Fed. Appx. 691, 706 n.14 (5th Cir. Nov. 4, 2003) (unpublished opinion) (proceedings before Texas State Bar grievance committee are quasi-judicial and qualify for absolute privilege); *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988 (5th Cir. 1999) (holding that Texas law grants absolute immunity from suit for statements made to a quasi-judicial body); *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912–13 (Tex. 1942). Such immunity is not limited to defamation claims, but also applies to all claims based on communications made during quasi-judicial proceedings, regardless of the label placed on the claim. *See Bird v. W.C.W.*, 868 S.W.2d 767, 772 (Tex. 1994); *Attaya v. Shoukfeh*, 962 S.W.2d 237, 239 (Tex. App.–Amarillo 1998, pet. denied); *Morales v. Murphey*, 908 S.W.2d 504, 507 (Tex. App.–San Antonio 1995, writ denied); *see Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 277 (5th Cir. 2001) (holding in the context of section 1983 witness immunity that, "[a]s a matter of logic, a person may not be prosecuted for conspiring to commit an act that he may perform with impunity" because allowing such conspiracy suits would circumvent the purposes of the immunity since "a witness rarely prepares her testimony on her own.").

Diddel argues that Canter and Grazi did not make "statements" to the State Bar, because they did not sign the grievance and Diddel has not alleged that they represented Davis as counsel in filing the grievance. Diddel did allege that Canter and Grazi conspired to have Davis file the grievance and that they were the source of the "lawyerly" language

used in the grievance. The only allegation as to the grievance is that Davis filed, and Canter and Grazi conspired to have Davis file, a written statement complaining that Diddel committed fraud. This allegation asserts liability for the contents of the statement filed with the State Bar of Texas. A lawyer or grievant who had a role in making such a statement is absolutely "privileged," or immune from suit, for that role. Diddel has alleged or sought leave to allege facts that trigger absolute immunity for Grazi and Canter, even though they are not the "grievant" or "witness."

Diddel argues that his allegation that defendants waived their immunity precludes dismissal. Diddel alleges that the defendants waived their immunity by engaging in "wrongful conduct." (Docket Entry No. 55, Ex. A ¶ 20). Diddel argues that Canter, Grazi, and Davis waived their right to immunity by engaging in a criminal conspiracy to commit a state jail felony and by committing fraud against him. (Docket Entry No. 55, p. 8; Docket Entry No. 55, Ex. A ¶¶ 9–21; Docket Entry No. 56, p. 8).

The alleged "state jail felony" is the act of "knowingly filing a false report with a governmental agency," the filing of the grievance with the State Bar. (Docket Entry No. 55, Ex. A ¶ 10). The alleged "fraud" is the defendants' mailing Diddel a copy of the draft complaint for the Florida lawsuit. (*Id.* ¶ 11). Diddel alleges that these acts demonstrate defendants' intent to relinquish their immunity.

Waiver of immunity must be intentional, be distinctly made, and appear clearly. *Austin Mun. Securities, Inc. v. Nat'l Ass'n of Securities Dealers*, 757 F.2d 676, 691 (5th Cir. 1985). Waiver may be demonstrated through actions, *Wells Fargo Business Credit v. Ben*

*Kozloff, Inc.*, 695 F.2d 940, 947 (5th Cir. 1982), but "cannot be inferred from silence alone. In the absence of an express renunciation, there must be an act from which an intention to waive may be inferred or from which waiver follows as a legal result." *Id.* Diddel has alleged no such actions in this case. The first act alleged to waive immunity, the filing of the grievance, is an act that is itself shielded by absolute immunity. The second act alleged to waive immunity—filing a demand letter with a draft complaint before filing a lawsuit—is not a basis for inferring an intent to waive immunity.

Diddel points to no cases that suggest that the defendants waived their immunity. The case Diddel relies on to show that waiver may be demonstrated by inconsistent actions, *Ford v. Culbertson*, 308 S.W.2d 855 (Tex. 1958), is a breach of contract action in which the court held that the jury had to decide whether a purchaser who accepted a substitute certificate of solvency waived the title requirement that only a certificate of solvency executed by a designated bank would suffice to release an estate's tax liability. *Ford* does not address waiver of immunity. The actions Diddel argues demonstrate waiver—sending him the draft of a complaint for a lawsuit and filing a grievance with the State Bar— were not inconsistent with claiming the immunity afforded State Bar grievants and others involved in statements made to the State Bar in grievance proceedings.

Dismissal for failure to state a claim is proper when the defendants are entitled to absolute immunity from liability based on the allegations in the complaint. *See Manor v. Texas Supreme Court Justices*, No. 03-40529, 2003 WL 2191944, at * 1 (5th Cir. Aug. 11, 2003) Canter's motion to dismiss the claims against him relating to the grievance is granted.

Diddel's motion for leave to amend to add allegations as to Canter and Grazi relating to the grievance is denied.

## II.     The Motion to Reconsider

The June 2, 2005 memorandum and order granted defendants' motions to dismiss claims arising from the Florida lawsuit, for lack of personal jurisdiction. Diddel seeks reconsideration. Diddel argues that this court mischaracterized the claims he asserted based on the Florida litigation and related demand letter filed against him and failed to consider his surreply, which he argues clarified the nature of his claims. (Docket Entry No. 38, p. 5). Diddel argues that he relies on allegations of intentional infliction of emotional distress and statutory violations to support personal jurisdiction over Davis, Canter, and Grazi, not on malicious prosecution or defamation. (*Id.*, p. 7). Diddel contends that he relied on the fact that defendants sent him a letter and a draft of the complaint as supporting Texas jurisdiction, rather than on the defendants' filing of the Florida lawsuit. (*Id.*, pp. 9–10).

This court did consider the defendants' letter and draft complaint sent to Diddel in Texas in issuing the memorandum and order. (Docket Entry No. 38, p. 11). Those facts do not support personal jurisdiction as to the claims arising from the Florida litigation and related letter and draft complaint sent to Texas. Similarly, characterizing the claims as intentional infliction of emotional distress and statutory violations does not change the jurisdictional outcome.

A federal district court may exercise personal jurisdiction only to the extent permitted under applicable state law. *Allred v. Moore & Peterson*, 117 F.3d 278, 281(5th Cir. 1997).

The Texas long-arm statute allows jurisdiction to the limits of due process. *Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). A court may assert personal jurisdiction under a theory of either "general" or "specific" personal jurisdiction. A court exercises specific jurisdiction over a defendant if the cause of action alleged arises out of or is related to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). A court may exercise specific jurisdiction if: (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). Jurisdiction is proper over a nonresident defendant if the defendant purposefully availed himself of the benefits and protections of Texas law by establishing minimum contacts with Texas, such that he should reasonably have anticipated being haled into court in Texas, and if the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005); *Cent. Freight Lines*, 322 F.3d at 380. A court must consider whether the defendant "purposefully directed" his activities toward the forum state or whether, in contrast, the defendant's contacts with the forum state are "random," "fortuitous," or "attenuated contacts." *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 337 (5th Cir. 1999).

The facts Diddel alleges and presents do not support a finding that the defendants had the requisite minimum contacts with Texas because they sent a letter and draft of a complaint

to Diddel in Texas. In *Evans v. Sweetser*, No. 96-2099 (N.D. Tex. Oct. 18, 1996), *aff'd*, 110 F.3d 794 (5th Cir. 1997) (table) (per curiam), Texas residents sued New Mexico residents alleging breach of covenant, intentional infliction of emotional distress, and civil conspiracy. The Texas plaintiffs had purchased a lot in New Mexico on which they planned to build a home. The defendants objected to the planned location of the home in a letter sent to the plaintiffs in Texas. The New Mexico defendants later sent another letter about the planned location to the plaintiffs in Texas. One of the defendants called plaintiff at his Texas home to discuss the matter. The court held that these contacts did not make Texas a proper forum for suit because telephonic and written communication of information regarding a contract does not establish specific jurisdiction over the nonresident defendant in a lawsuit over a contract, even when the communications are "extensive." *Id.* at * 6 (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (1986)). The court held that "[a]s in *Holt Oil*, the communications to Texas in this case 'rested on nothing but the mere fortuity that [plaintiffs] happen[] to be [] resident[s] of the forum.'" *Id.* The court held that it lacked personal jurisdiction over the claim for intentional infliction of emotional distress because the Texas plaintiffs did not show that defendants purposefully directed their actions toward Texas and that Texas was the focal point of their claim. *Id.* at * 8. The fact the defendants mailed the letters to Texas was merely fortuitous. *Id.* at * 9.

Diddel contends that "the Defendants committed an act in Texas when they prepared and sent to Mr. Diddel in Texas a false complaint for the sole purpose to threaten, harass and cause emotional distress to Mr. Diddel in Texas—and force a sale of the property." (Docket

Entry No. 38, pp. 9–10). The letter and draft complaint threatened litigation in Florida, over a Florida property that was the subject of a contract negotiated and executed in Florida, to be performed in Florida. Like the plaintiff in *Evans*, Diddel received the letter and draft complaint in Texas because of the mere fortuity that he was a Texas resident. The demand letter and draft complaint were not "published" or otherwise disseminated in Texas; the fact that Diddel experienced some distress in Texas from receiving the letter is insufficient to confer jurisdiction on a Texas court. *See Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753–54 (5th Cir. 1996). The nonresident defendants' letter threatening litigation in another state does not support the exercise of personal jurisdiction. *See Ham v. La Cienega Music Co.*, 4 F.3d 413 (5th Cir. 1993) (copyright owner's efforts to distribute allegedly infringed songs in Texas and demand letter sent to Texas plaintiff who owned allegedly infringing work were insufficient to subject defendant to personal jurisdiction in Texas); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986) (communication by defendant with plaintiff in forum state in course of contract negotiation and performance does not support exercise of specific jurisdiction); *Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36 (9th Cir. 1980) (defendant did not, by sending demand letters alleging patent infringement to defendant in forum state, submit to personal jurisdiction there).

Diddel argues that this court was wrong to dismiss claims for lack of personal jurisdiction without first giving him the opportunity to conduct discovery and to amend his pleadings to correct any deficiencies. (Docket Entry No. 38, pp. 10–11). This court twice extended Diddel's time to respond to the motion to dismiss for lack of jurisdiction. (Docket

Entry Nos. 13, 16). Diddel did not timely ask for specific jurisdictional discovery. *See Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (noting the procedures that must be followed to request jurisdictional discovery). The record provides an ample basis to conclude that specific personal jurisdiction based on the Florida lawsuit is lacking. The motion to reconsider the personal jurisdiction holding is denied.

The suit filed against Diddel in the Southern District of Florida remains pending, as does Diddel's counterclaim. *Davis v. Diddel*, No. 04-14292 (S.D. Fla.). Canter and Grazi are not parties to the Florida suit. As to Davis, Diddel's counterclaim raises issues identical to those asserted in this case. Diddel seeks rescission of the Florida contract for three reasons: "(1) Mr. Davis' filing of a wrongful grievance against Mr. Diddel with the State Bar of Texas, falsely accusing Mr. Diddel of engaging in fraud in regard to the contract; (2) wrongfully sending Mr. Diddel a draft Florida complaint falsely accusing Mr. Diddel of engaging in fraud in regard to the contract and/or (3) filing the instant lawsuit against Mr. Diddel falsely accusing Mr. Diddel of engaging in fraud in regard to the contract." (Diddel's First Amended Answer in *Davis v. Diddel*, p. 8). Davis asserts immunity as a defense to Diddel's claims arising from filing of the Texas grievance. (Davis's Answer to Amended Counterclaim in *Davis v. Diddel*, p. 1). Diddel argues that Davis waived that defense because of his wrongful conduct. The Florida case has already proceeded to a bench trial, which has been concluded. This court's dismissal of the claims arising from the demand letter and draft complaint does not affect the disposition of those claims in the Florida case.

Even if this court found that it had personal jurisdiction over the nonresident defendants with respect to the claims arising from the filing of the Florida litigation and related demand letter, this court would stay further proceedings on those claims pending the decision in the Florida federal court. *See Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544–55 (5th Cir. 1983); 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1418 (2d ed. 1990) ("Ideally, once a court becomes aware that an action on a docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceedings.").

## III. Conclusion

Diddel's motion to reconsider is denied; the motion for leave to amend is denied. Canter's motion to dismiss is granted, and Davis's motion to dismiss is granted. The following motions are denied as moot: Diddel's motion for continuance; Grazi's motion for severance; Diddel's motion for leave to take the depositions of Thomas Davis, Ronald S. Canter, Leif Grazi, and Joan Beyer; and defendants' joint motion for protective order and motion to quash depositions. This case will be dismissed by separate order.

SIGNED on January 30, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge